### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

KRISTINE KEYES,

                  Plaintiff,

      v.

NATIONSTAR MORTGAGE,LLC; U.S.
BANK, N.A. AS TRUSTEE FOR
LSF9 MASTER PARTICIPATION
TRUST; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC.;
BANK OF AMERICA, N.A. AS
CLAIMED SUCCESSOR IN INTEREST
TO COUNTRYWIDE HOME LOANS,
INC.; SHERIFF OF CAMDEN
COUNTY; AND RAS CITRON LAW
OFFICES,

                  Defendants.

No. 1:20-cv-02649 (NLH)(KMW)

**OPINION**

---

**APPEARANCES:**

JOSHUA LOUIS THOMAS
JOSHUA L. THOMAS & ASSOCIATES
225 WILMINGTON WEST CHESTER PIKE
SUITE 200
CHADDS FORD, PA 19317

*Attorney for Plaintiff Kristine Keyes.*

FRANCESCA ANN ARCURE
MCCALLA RAYMER LEIBERT PIERCE, LLC
99 WOOD AVENUE
ISELIN, NJ 08830

*Attorney for Defendant Nationstar Mortgage, LLC.*

JOY HARMON SPERLING
STEPHEN ROBERT CATANZARO
DAY PITNEY LLP
1 JEFFERSON RD
PARSIPPANY, NJ 07054

*Attorneys for Defendants U.S. Bank, N.A. As Trustee for LSF9 Master Participation Trust, and Mortgage Electronic Registration Systems Inc.*

MICHAEL E. BLAINE
WINSTON & STRAWN, LLP
200 PARK AVENUE
NEW YORK, NY 10166

*Attorney for Defendant Bank of America, N.A. As Claimed Successor in Interest to Countrywide Home Loans, Inc.*

DAVID NEEREN
RAS CITRON, LLC
425 COMMERCE DRIVE
SUITE 150
FORT WASHINGTON, PA 19034

*Attorney for Defendant RAS Citron Law Offices.*

**HILLMAN**, District Judge

This matter arises out of a 2015 foreclosure action in New Jersey state court.  Presently before the Court are Plaintiff Kristine Keyes's motions to remand and for an extension of time, (ECF No. 16 and 22), motions to dismiss filed by each Defendant except the Sheriff of Camden County, (ECF No. 9, 13, 17, and 21), and the motion for sanctions filed by Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and U.S. Bank, N.A., as trustee for LSF9 Master Participation Trust. (ECF No. 25).  For the reasons expressed below, Plaintiff's motions to remand and for an extension of time will be denied, Defendants' various motions to dismiss will be granted with prejudice, and the motion for sanctions filed by MERS and U.S. Bank will be granted.

**BACKGROUND**

On August 8, 2006, Plaintiff executed a Note in favor of Countrywide Home Loans, Inc.  To secure that Note, she also executed a mortgage in favor of Defendant MERS, as nominee for Countrywide, on a property at 7236 Walnut Avenue, Pennsauken Township, New Jersey 08109.  (ECF No. 1-1 at Ex. A).  On May 9, 2011, MERS assigned the mortgage to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, and the mortgage was recorded in the Camden County Clerk's Office on May 16.  Nearly two years later on March 28, 2013, the BAC assignment was corrected, with the mortgage assigned by Countrywide to Defendant Nationstar Mortgage, LLC.  That assignment was then recorded on June 26, 2013.  (ECF No. 1-1 at Ex. B).

Almost six months later, on December 17, 2013, Nationstar filed an action in mortgage foreclosure in the Superior Court of New Jersey, Chancery Division, due to Plaintiff's alleged default on the mortgage.  (ECF No. 9-6 Ex. D).  Plaintiff was personally served with the complaint in that action on July 1, 2014.  After Plaintiff failed to respond or make an appearance in the action, a final judgment of foreclosure was entered on July 16, 2015.  (ECF No. 1-1 at 7; ECF No. 9-8 Ex. F).

On December 2, 2015, Plaintiff filed a Chapter 13 voluntary bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey, pursuant to which activity related

3

to the foreclosure was automatically stayed.  (ECF No. 9-17 Ex. O).  That action was dismissed on March 21, 2017, due to Plaintiff's "failure to file a feasible plan, income and/or budget statement."  Id. at 5.  The case was reinstated on April 18, 2017, and ultimately dismissed again on January 25, 2018. Id. at 8.  On August 8, 2018, Plaintiff filed another voluntary bankruptcy petition in the Bankruptcy Court for the District of New Jersey.  (ECF No. 9-18 Ex. P).  On March 20, 2019, the Bankruptcy Judge entered an order vacating the automatic stay. Id.  About a month later, on April 17, 2019, the property was finally sold at a sheriff's sale pursuant to the original foreclosure action, to Defendant U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust.  (ECF No. 13-5 Ex. I).  The second bankruptcy action was later dismissed on May 8, 2019.  It appears that at some point following this dismissal, Plaintiff hired Joshua Thomas as counsel.

A few months later, on November 6, 2019, Plaintiff, represented by Thomas, filed a motion to vacate the final judgment and the sheriff's sale and a motion to stay eviction in the original foreclosure action.  (ECF No. 13-5 Ex. J and K). These motions raised a series of arguments regarding the effectiveness of the mortgage, its assignment, and the ability of Nationstar to foreclose on it.  See id.  The motion to stay

4

was summarily denied the next day, and the motion to vacate was later withdrawn.  Id. at Ex. L and M.

The very same day that Plaintiff's motion to stay eviction was denied, she filed a third bankruptcy petition, through a separate attorney from Mr. Thomas, in the same bankruptcy court. (ECF No. 9-19 Ex. Q).  U.S. Bank responded by filing a motion for relief from the automatic stay associated with the bankruptcy petition on December 3, 2019.  Id.  On January 7, 2020, the Bankruptcy Judge granted U.S. Bank's motion, and issued an order that included a provision stating that any future bankruptcy filings by Plaintiff would not stay the Foreclosure Action.  Id. at ECF 32.  The third bankruptcy action was then dismissed a few weeks later, on January 23, 2020.  Id.

Finally, Plaintiff, through Mr. Thomas, filed the present Complaint in the Superior Court of New Jersey, Law Division, Camden County on February 18, 2020, raising many of the same arguments she had made in her previous motions to stay eviction and to vacate the foreclosure action in the state chancery court, as well as directly related claims under the Federal Debt Collection Practices Act ("FDCPA").  A week later, she then filed yet another motion to stay eviction in the original foreclosure action before the chancery court, but the motion was eventually withdrawn.  (ECF No. 13-6 at Ex. N, O, and P).

The case was then removed by Nationstar on March 11, 2020 and assigned to this Court. (ECF No. 1). On March 24, MERS and U.S. Bank filed a motion to dismiss the Complaint, (ECF No. 9), which was followed shortly after by a motion to dismiss filed by Nationstar. (ECF No. 13). Plaintiff opposed both motions on April 9, and simultaneously moved for remand back to the state court, (ECF No. 16), which Defendants opposed. (ECF No. 19 and 20). The same day that Plaintiff opposed the first two motions to dismiss, Defendant Bank of America, N.A. filed a third motion to dismiss the Complaint, which was followed on May 13 with a fourth and final motion to dismiss filed by RAS Citron Law Offices. (ECF No. 17 and 21).

Although her deadline to oppose Bank of America's motion had passed several weeks earlier, Plaintiff then moved for an extension of time to respond to the latter two motions on May 18, (ECF No. 22), which Defendants opposed. (ECF No. 19). Plaintiff to this date has not filed any brief opposing the latter two motions to dismiss. Finally, on June 23, MERS and U.S. Bank filed a motion for sanctions against Plaintiff and her attorney, alleging they had brought frivolous claims, (ECF No. 25). A week after her deadline to oppose the motion for sanctions had passed, Plaintiff filed an opposition brief. (ECF No. 27).

## DISCUSSION

### I.  Subject Matter Jurisdiction

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II.  Motion to Remand

The Court first addresses Plaintiff's motion to remand this action back to New Jersey state court.  The federal removal statute permits a defendant to remove a civil action from state court to federal district court when the district court has original jurisdiction over the action.  28 U.S.C. § 1441(a). Once the case has been removed, however, the court may nonetheless remand it to state court if the removal was procedurally defective or "subject matter jurisdiction is lacking."  28 U.S.C. § 1447(c); Costa v. Verizon N.J., Inc., 936 F. Supp. 2d 455, 458 (D.N.J. 2013).  The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 199) (citing Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

28 U.S.C. § 1331 provides the district courts with original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.  Generally, "determining whether a particular case

7

arises under federal law turns on the 'well-pleaded complaint'
rule." Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004)
(citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation
Trust for S. Cal., 463 U.S. 1, 9-10 (1983)).  Under this rule,
subject-matter jurisdiction as described under 28 U.S.C. § 1331
may only be exercised when a federal question is presented on
the face of the complaint. Caterpillar, Inc. v. Williams, 482
U.S. 386, 392 (1987); see also Holmes Group, Inc. v. Vornado Air
Circulation Systems, Inc., 535 U.S. 826, 831 (2002) (quoting
Caterpillar, 482 U.S. at 398-99) (explaining that because the
plaintiff is "the master of the complaint," the well-pleaded-
complaint rule enables him, "by eschewing claims based on
federal law, ... to have the cause heard in state court").

Plaintiff has not put forth any legitimate arguments for
remand, and accordingly her motion will be denied.  First,
Plaintiff confusingly and incorrectly argues that "Defendant
Nationstar proffers only one basis for removal: the presence of
diversity jurisdiction."  (ECF No. 16 at 4).  However, even a
brief review of Nationstar's Notice of Removal makes entirely
clear that the basis for removal was federal question
jurisdiction, because the Complaint alleges violations of the
FDCPA.  (ECF No. 1 at 2-3).

Plaintiff next argues that removal was improper because
"this court not only lacks Subject Matter Jurisdiction, but

there is no actual basis fore [sic] removal at all, since the
case sounds primarily in state law and the FDCPA can be heard in
a state court." (ECF No. 16 at 5). Plaintiff provides no
further argument or explanation for how the Court lacks subject
matter jurisdiction in this case, nor could she. The Complaint
unquestionably includes three claims for violations of the FDCPA
against Defendants Nationstar, U.S. Bank, and RAS Citron Law
Offices, alleging no further facts than those already alleged as
the bases for her state law claims. Accordingly, the Court has
subject matter jurisdiction over this action.

Plaintiff's second argument entirely ignores, or misstates,
the law regarding removal of state court actions. The majority
of her motion to remand is dedicated to the proposition that
because state courts have the ability to hear and adjudicate
FDCPA claims, removal was improper and this Court cannot hear
the claim instead. However, the ability of state courts to hear
claims under federal statutes has no import for the question of
removal: § 1441(a) allows a defendant to remove any state court
civil action that could have originally been brought in federal
court, with no regard for whether the claim could also be
allowed to be brought in front of the state court in the first
place. Plaintiff is the master of her complaint, and could have
chosen not to allege violations of the FDCPA — she chose to do
so, and accordingly provided this Court with federal question

jurisdiction and Defendants with the right to remove the action to federal court.  For this reason, Plaintiff's motion to remand will be denied.

## III. __Motion for Extension__

Plaintiff has also moved for an extension of time to respond to the motions to dismiss filed by Defendants Bank of America and RAS Citron Law Offices, or alternatively for a stay of the deadlines for those motions until her motion to remand is decided.  The return date for Bank of America's motion to dismiss for opposing the first of these motions was May 4, 2020. Plaintiff did not oppose the motion by that date, and then on May 18, five days after RAS Citron filed their motion to dismiss, she filed the present motion for an extension of time to respond to both motions.  Since that point, Plaintiff has made no further attempts to oppose those motions, despite the deadline she requested having passed over four months ago.

This Court has discretion to extend a deadline prior to the time having expired upon a showing of good cause, and discretion to extend a deadline after the time has expired upon a showing of good cause and excusable neglect. See Fed. R. Civ. P. 6(b)(1)(B); Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010).  Here, Plaintiff has made no attempt to demonstrate good cause or excusable neglect.  Instead, she simply argues, mistakenly, that the prior motions were not "heard" by this

Court on the motion return date, and that these motions should be stayed until after her motion to remand is decided.

However, the docket made clear that the motions to dismiss would be heard on their pleadings and without oral argument, and as Local Rule 7.1(d)(2) explains, the deadline for filing any papers in opposition to a motion is fourteen days prior to the motion date.  The Court finds that failure by Plaintiff's counsel to review or understand the relevant rules regarding procedure and scheduling in this district, and subsequent failure by Plaintiff to ever file any briefing in opposition to these motions, does not demonstrate good cause or excusable neglect.  Similarly, as the Court explained above, her motion to remand was entirely baseless and without any applicable legal argument, and accordingly would not be an appropriate basis for staying these motions.  For these reasons, Plaintiff's motion for an extension will also be denied.

The Court now turns to Defendants' motions to dismiss the Complaint.

## IV.  <u>Legal Standard for Motions to Dismiss</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.

11

Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly."). "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

When considering a motion to dismiss, the Court may not
consider "matters extraneous to the pleadings." Crisdon v. City
of Camden, No. 11-cv-02087, 2012 WL 685874, at *2 (D.N.J. Mar.
2, 2012) (quoting In re Burlington Coat Factory Sec. Litig., 114
F.3d 1410, 1426 (3d Cir. 1997)); Schmidt v. Skolas, 770 F.3d
241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v.
White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).
"However, an exception to the general rule is that a 'document

13

integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" In re Burlington Coat Factory, 114 F.3d at 1426 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Such documents include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Crisdon, 2012 WL 685874, at *2 (quoting Buck v. Hampton Twp. School Dist., 452 F.3d 256, 260 (3d Cir. 2006)). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(d).

In their motions to dismiss, Defendants largely rely on a series of overlapping exhibits, which provide the Court with Plaintiff's filings in prior actions before the New Jersey state courts and the United States Bankruptcy Court for the District of New Jersey, as well as the relevant opinions, dockets, and orders of those courts.  "[A] court may take judicial notice of the record from a previous court proceeding between the parties." Toscano v. Conn. Gen. Life Ins. Co., 288 Fed. App'x 36, 38 (3d Cir. 2008).  As these documents all fall within this category, the Court will take judicial notice over the filings,

14

dockets, and orders from the relevant prior proceedings and consider them for the purposes of the present motions.

The Court now looks to Defendants' arguments in their moving papers considering these documents.

**V.**    **Defendants' Motions to Dismiss Will Be Granted**

As described above, Defendants have filed four separate motions to dismiss, raising mostly overlapping arguments.  Most centrally, Defendants argue that Plaintiff's claims should be dismissed because (1) this Court lacks jurisdiction over Plaintiff's claims under the Rooker-Feldman doctrine; (2) the claims are barred by the entire controversy doctrine; (3) the claims are barred by res judicata and collateral estoppel; and (4) Plaintiff has failed to state any claims under which relief can be granted.  For the reasons expressed below, the Court will grant Defendants' motions, and the Complaint will be dismissed with prejudice.

**A. The Court is barred from hearing Plaintiff's declaratory judgment claims under the Rooker-Feldman doctrine.**

Defendants first argue that this Court does not have subject-matter jurisdiction over this case, because it is divested of such jurisdiction by the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine deprives a federal district court of jurisdiction to review, directly or indirectly, a state court adjudication." Judge v. Canada, 208 F. App'x. 106, 107 (3d Cir.

15

2006) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462
(1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)).
Specifically, the doctrine bars federal courts from hearing a
claim when: (1) "'the federal claim was actually litigated in
state court prior to the filing of the federal action' or (2)
'if the federal claim is inextricably intertwined with the state
adjudication, meaning that federal relief can only be predicated
upon a conviction that the state court was wrong.'"  Madera v.
Ameriquest Mortg. Co., 586 F.3d 228, 232 (3d Cir. 2009) (quoting
In re Knapper, 407 F.3d. 573, 580 (3d Cir. 2005)).

     The July 15, 2016 final judgment of the foreclosure action
clearly suffices as a final judgment for the purposes of the
Rooker-Feldman doctrine.  And even if the later motions to
vacate and to stay the sheriff's sale had not been dismissed,
they would not impact the Court's analysis, as "New Jersey law
makes clear that the foreclosure judgment is a final judgment,
and the Sheriff's sale is only an execution of that judgment . .
. [and] a pending motion to vacate has no bearing on the
applicability of the Rooker-Feldman Doctrine."  Patetta v. Wells
Fargo Bank, NA, No. 09-2848, 2010 WL 1931256, at *8 (D.N.J. May
13, 2010).

     Here, the question is whether Plaintiff's claims are
"inextricably intertwined" with the state foreclosure action.
The fact that the state court judgment was a default judgment

16

has no impact on the Rooker-Feldman analysis.  See Knapper, 407
F.3d at at 581.  Instead, a claim is considered "inextricably
intertwined" with a state adjudication if "the relief sought
would undo or prevent the enforcement of the state court's
order" or otherwise "negate the state court's judgment."  Walker
v. Horn, 385 F.3d 321, 330 (3d Cir. 2004) (quoting Desi's Pizza,
Inc. v. City of Wilkes-Barre, 321 F.3d 411, 432-22 (3d Cir.
2003)).  "In other words, Rooker-Feldman precludes a federal
action if the relief requested in the federal action would
effectively reverse the state decision or void its ruling."
FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834,
840 (3d Cir. 1996).

Defendants argue that Plaintiff's complaint seeks to do
just that.  The complaint raises a number of difficult to follow
arguments, which ultimately appear to focus on claims that the
mortgage and related note were improperly endorsed, the later
assignments of the mortgage and note were ineffective, and
accordingly the foreclosure action and subsequent Sheriff's sale
of the property were improper.  While the Complaint includes
brief discussion of Defendants' actions in the later bankruptcy
actions, their actual claims all focus on their allegations
regarding the mortgage's endorsement and assignment.  As
Defendants note, Counts I-IV of the Complaint essentially demand

versions of the same four forms of relief from the Court, with multiple of these demands showing up in Counts V-VII as well:

    (1)  An order declaring U.S. Bank's interest in the Mortgage/Note and Property invalid and void;

    (2)  An order declaring the July 16, 2015 final default judgment invalid and void;

    (3)  An order declaring the Sheriff's Sale invalid and void; and

    (4)  An order declaring the attempts to eject/evict Plaintiff from the Property invalid and void.

Plaintiff's brief argues that the Complaint "does not seek to overturn" the state court's orders. (ECF No. 16 at 8). However, this argument demonstrates either a lack of familiarity with her own Complaint, or a straightforward attempt to mislead the Court: the Court struggles to see how Plaintiff's request in Count I of the Complaint that the Court declare "the judgment of July 16, 2015 *void ab initio*" would not negate or overrule the state court's judgment. (ECF No. 1-1 at 14).

Plaintiff similarly requests that the Court make additional other declarations regarding a series of issues focused on the validity of the mortgage, its assignment, and the subsequent sheriff's sale. Plaintiff does not cite to any case law whatsoever to support the argument that these claims for relief are not also attempts to reverse the state court's rulings

18

barred by Rooker-Feldman, nor could she. "Under New Jersey law,
the state foreclosure judgment necessarily decided in
Defendants' favor the following essential elements: the validity
of the note and mortgage; the alleged default; and Defendants'
right to foreclose (which would include its standing by
assignment or otherwise)." Sheldrick v. Wells Fargo Bank, N.A.,
No. 16-2797, 2016 WL 7325473, at *6 (D.N.J. Dec. 16, 2016); see
also Siljee v. Atl. Stewardship Bank, No. 15-CV-1762, 2016 WL
2770806, at *6 (D.N.J. May 12, 2016) (citing Great Falls Bank v.
Pardo, 622 A.2d 1353, 1356 (N.J. Super. Ct. Ch. Div. 1993)).
Similarly, courts in this district have repeatedly held that the
Rooker-Feldman doctrine forbids federal court claims seeking to
challenge a foreclosure judgment, the validity of the mortgage,
or the right to foreclose. See, e.g. Gage v. Wells Fargo Bank,
N.A., 521 F. App'x. 49, 51 (3d Cir. 2013) (Plaintiff could not
evade the Rooker-Feldman doctrine because the "complaint reveals
the nature of [the plaintiff's] claims against Wells Fargo: the
bank had no right to foreclose on the property and therefore
committed 'criminal acts' by enforcing the foreclosure
judgment"); Anise v. JP Morgan Chase Bank, N.A., No.: 16-8125
(FLW)(DEA), 2017 U.S. Dist. LEXIS 103912 (D.N.J. July 5, 2017)
(holding Rooker-Feldman barred a number of different claims as
collateral attacks on a state foreclosure judgment); Dunbar v.
Nationstar Mortg., LLC, No. 16-4259, 2016 WL 6804874, at *2

(D.N.J. Nov. 16, 2016) ("<u>Rooker-Feldman</u> prohibits the Court from exercising jurisdiction over Plaintiff's statutory and common law claims challenging the validity of the loan agreement and Defendants' right to foreclose."); <u>Lewis v. Pennymac Corp.</u>, No. 16-1514, 2016 WL 2901707, at *3 (D.N.J. May 18, 2016) (<u>Rooker-Feldman</u> divested court of jurisdiction because "[t]he gravamen of Plaintiff's Complaint is that Defendants had no right or standing to foreclose on the Property."); <u>Siljee</u>, 2016 WL 2770806 at *5 (<u>Rooker-Feldman</u> doctrine barred breach of contract claim because "[i]ts essence... is that the mortgage is invalid or that Atlantic had no standing to assert it.").

Each of Plaintiff's claims, with the possible exception of her FDCPA claims, are therefore on their face "inextricably intertwined" with the state court foreclosure action and the final judgment entered there.  For the Court to grant Plaintiff any of the declaratory relief she requests, it would necessarily need to negate the state court's final foreclosure judgment and prevent it from enforcing it going forward.  Such actions are barred by <u>Rooker-Feldman</u>.  Accordingly, Counts I-IV of the Complaint, which seek no other relief than declaratory judgment, are barred.  Counts V-VII, however, which also seek damages under the FDCPA, survive the <u>Rooker-Feldman</u> analysis.

The question then is how to address these additional claims.  When a federal court finds that claims before it are

barred by the <u>Rooker-Feldman</u> doctrine, the standard approach is
to remand those claims back to state court.  <u>See</u> <u>Thorne v.</u>
<u>OneWest Bank, F.S.B.</u>, No. 15-422, 2015 U.S. Dist. LEXIS 82498,
at *7 (D.N.J. Jun. 25, 2015).  However, in cases where the
claims remaining after a <u>Rooker-Feldman</u> analysis would also be
barred by New Jersey's entire controversy doctrine, courts in
this district have found that dismissal of the entire complaint
promotes the most "economical use of judicial resources."
<u>Patetta v. Wells Fargo Bank, NA</u>, No. 09-2848, 2010 WL 1931256
(D.N.J. May 13, 2010) (citing <u>Opdycke v. Stout</u>, 233 F. App'x.
125, 131 n.10 (3d Cir. 2007)).  As Defendants have also moved to
dismiss based on that doctrine, the Court will now assess those
arguments before determining the proper disposition of this
case.

   **B. <u>Plaintiff's claims are barred under the Entire
       Controversy Doctrine.</u>**

   "New Jersey's entire controversy doctrine 'embodies the
principle that the adjudication of a legal controversy should
occur in one litigation in only one court; accordingly, all
parties involved in a litigation should at the very least
present in that proceeding all of their claims and defenses that
are related to the underlying controversy.'"  <u>Shibles v. Bank of</u>
<u>America, N.A.</u>, 730 F. App'x. 103, 106 (3d Cir. 2018) (quoting
Wadeer v. N.J. Mfrs. Ins. Co., 110 A.3d 19, 27 (N.J. 2015)).

The doctrine "applies in federal courts when there was a
previous state-court action involving the same transaction[.]"
Ricketti v. Barry, 775 F.3d 611, 613 (3d Cir. 2015).  It
requires "claims that [are] germane to [a] foreclosure
proceeding" to be brought in that foreclosure proceeding.
Delacruz v. Alfieri, 145 A.3d 695, 701 (N.J. Super. Ct. Law Div.
2015).

Under the Full Faith and Credit Clause, federal courts are
required to "give the same preclusive effect to a state-court
judgment as another court of that State would give." Exxon Mobil
Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)
(quoting Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518,
523 (1986)).  Accordingly, New Jersey's entire controversy
doctrine governs the claims currently before the Court.
Opdycke, 233 F. App'x. at 128–29 (citing Rycoline Prods., Inc.
v. C&W Unlimited, 109 F.3d 883, 887 (3d Cir. 1997)).

The Court notes that there is no question as to whether
there was a valid, final judgment in the foreclosure action.
"The rule in New Jersey is that a default judgment is a valid
and final adjudication on the merits." Adkins v. Sogliuzzo, No.
09-1123 (SDW), 2013 WL 5468970, at *7 (D.N.J. Sept. 30, 2013)
(quoting Tagayun v. Citibank, N.A., No. 05-4302, 2006 WL
5100512, at *4 (D.N.J. June 9, 2006)).  The default final
judgment here therefore has preclusive effect. Mason v. US

22

Bank, NA, No. 16-1366, 2016 WL 7189828, at *5 (D.N.J. Dec. 12, 2016).  The central question then is whether Plaintiff's claims here could and should have been raised in opposition to the original foreclosure complaint.

First, it is entirely clear that Counts I-IV, seeking a series of declaratory judgments, are barred by the entire controversy doctrine.  Plaintiff appears to argue that her claims were not "germane" to the foreclosure proceeding, and therefore are not covered by its final judgment.  However, every one of these claims is directly related to issues such as the validity of the assignments of the mortgage and the right of Defendants to foreclose on the property, issues that are unquestionably germane to the foreclosure action and that New Jersey law requires her to have raised in that action.  Shibles, 730 F. App'x at 106.  Plaintiff failed to do so, and therefore these claims are barred.

The Court's review of the Complaint makes clear that Plaintiff's FDCPA claims in Counts V-VII are similarly barred. Under the entire controversy doctrine, "[a] defendant in a foreclosure case may not fail to diligently pursue a germane defense and then pursue a civil case against the lender alleging fraud by foreclosure."  Id. at 106-07 (quoting Adelman v. BSI Fin. Servs., Inc., 179 A.3d 431, 453 (N.J. Super. Ct. App. Div. 2018)).

Plaintiff here has clearly attempted to do just that.  Her
FDCPA claims are admittedly difficult to follow and mostly
repeat the exact same language as her declaratory judgment
counts; however, the only clear allegations that the Court has
been able to decipher are that Defendants U.S. Bank, Nationstar
Mortgage, and RAS Citron Law Offices all committed fraud under
the FDCPA, because Nationstar did not have standing to bring the
foreclosure action since the mortgage and the assignment of the
mortgage were allegedly invalid.  While Plaintiff appears to
make allegations regarding Defendants' standing in the
bankruptcy actions as well, these claims are similarly entirely
focused on the validity of the mortgage and its assignment.

Such claims are exactly the type that New Jersey law
requires a party to assert in the foreclosure action, as courts
in this district have previously and repeatedly held.  See,
e.g., Lopaz v. Stern & Eisenberg, P.C., No. CV 18-2136 (RMB/JS),
2018 WL 6061576 (D.N.J. Nov. 20, 2018) (holding that FDCPA claim
that party could not bring foreclosure action could have been
raised in the underlying foreclosure action and therefore is
barred by the entire controversy doctrine); Lee v. Ocwen Loan
Servicing, LLC, No. 17-3800 (JBS/KMW), 2018 WL 935426, at *3
(D.N.J. Feb. 15, 2018) (same);  Monclova v Goldberg & Wolf, LLC,
No. 17-1481, 2017 WL 4790386, at *4 (D.N.J. Oct. 23, 2017)

(same); <u>Hua v. PHH Mortgage, et al.</u>, No. 14-7821 (JBS/AMD), 2015 WL 5722610, at *6 (D.N.J. Sept. 29, 2015) (same).

The Court finds that Plaintiff's claims are also barred by the entire controversy doctrine.[1]  Accordingly, the Court will dismiss the Complaint with prejudice.

### C. **Plaintiff fails to state a valid claim under the FDCPA.**

While the Court's findings regarding the <u>Rooker-Feldman</u> and entire controversy doctrines above are dispositive, the Court will also briefly address Defendants' arguments that Plaintiff failed to sufficiently state any FDCPA claims, as they are relevant to the Court's assessment of the present motion for sanctions below.

Plaintiff's FDCPA claims, found in Counts V-VII of the Complaint, are nearly incomprehensible.  They claim to seek damages against U.S. Bank, Nationstar, and RAS Citron Law Offices for false claims and fraud under 15 U.S.C. 1692(e)(2)

---

[1] As the Court has already determined that Plaintiff's claims are barred under both <u>Rooker-Feldman</u> and the entire controversy doctrine, it is unnecessary to address Defendants' arguments regarding res judicata and collateral estoppel.  However, the Court notes that the entire controversy doctrine is closely related to the concept of res judicata.  <u>See</u> <u>Accident Fund Ins. Co. v. PML Holdings Group, LLC</u>, 2009 WL 4724804, *5 (N.J. Super. Ct. App. Div. Dec. 11, 2009) ("The Entire Controversy Doctrine promotes the policies of mandatory joinder and claim preclusion associated with the more widely known doctrine of res judicata."); <u>Rycoline Prods. v. C & W Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997) ("The entire controversy doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles.").

and (10).  However, these claims allege no additional facts, and do not explain exactly what alleged fraud or false claims they are related to; for the most part, the FDCPA claims simply reincorporate and repeat the exact same allegations, and simultaneously request the exact same declaratory relief, as Counts I-IV.

After a thorough and time-intensive exploration of the Complaint, it appears to the Court that Plaintiff intended to allege that the parties committed fraud when Nationstar filed the foreclosure action and when they asserted standing in the bankruptcy actions, because Plaintiff alleges the underlying endorsement and assignment of the mortgage were invalid. However, these allegations are in no way clear on the face of the Complaint, nor are they sufficient to raise FDCPA claims. They do not specify exactly how Plaintiff believes the FDCPA was violated, or how those claims are relevant to RAS Citron Law Offices, who were merely counsel for Nationstar.  They also entirely fail to allege at any point that any of the three FDCPA defendants are actually "debt collectors," as is required to state a valid FDCPA claim.  Thomas v. John A. Youderian Jr., LLC, 232 F. Supp. 3d 656, 671 (D.N.J. 2017).

Similarly, it appears extremely likely that these claims are time-barred under the FDCPA's one-year statute of limitations, 15 U.S.C. § 1692(k), since the Court's best attempt

at interpreting the Complaint is that they are related to the
2015 foreclosure action and activities that preceded it.
However, the claims are so devoid of factual allegations, such
as relevant dates, that the Court cannot properly assess this
argument.  The Court therefore finds that Plaintiff has also
failed to sufficiently state a valid FDCPA claim against any of
these three defendants.

**VI.   Defendants' Motion for Sanctions**

Finally, Defendants MERS and U.S. Bank move for Rule 11
sanctions against Plaintiff and her attorney, Joshua Thomas, for
filing a frivolous lawsuit.  Rule 11 states that:

> By presenting to the court a pleading, written motion, or
> other paper--whether by signing, filing, submitting, or
> later advocating it--an attorney . . . certifies that to
> the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the
> circumstances: (1) it is not being presented for any
> improper purpose, such as to harass, cause unnecessary
> delay, or needlessly increase the cost of litigation; (2)
> the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous argument for
> extending, modifying, or reversing existing law or for
> establishing new law; (3) the factual contentions have
> evidentiary support or, if specifically so identified, will
> likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery; and (4)
> the denials of factual contentions are warranted on the
> evidence or, if specifically so identified, are reasonably
> based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11(c) further provides that if "the court determines
that Rule 11(b) has been violated, the court may impose an

appropriate sanction on any ... party that violated the rule or is responsible for the violation."

The rule is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986).  Rule 11 sanctions are warranted only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous.  Paris v. Pennsauken School Dist., 2013 WL 4047638, at *6 (D.N.J. 2013) (citing Watson v. City of Salem, 934 F. Supp. 643, 662 (D.N.J. 1995); Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988)).  The Third Circuit has recognized that sanctions should only be imposed in those rare instances where the evident frivolousness of a claim or motion amounts to an "abuse[ ] of the legal system." Id.  Moreover, a court must look to whether an attorney's or party's representations to the court were reasonable under the circumstances.  Pettway v. City of Vineland, 2015 WL 2344626, at *7 (D.N.J. 2015) (citing Bus. Guides v. Chromatic Commc'ns Ent., 498 U.S. 533, 551 (1991)).

Here, MERS and U.S. Bank argue that the claims brought by Plaintiff and her counsel meet this high standard.  After a close and searching review of the pleadings and the factual and

procedural background of this long-lived dispute, the Court
agrees.  While the Court will, in its discretion, elect not to
sanction Plaintiff herself, it finds that the actions of Mr.
Thomas in bringing and prosecuting this action do merit
sanctions.

First, the Court notes that the claims brought in the
Complaint filed and signed by Mr. Thomas are, on their face,
clearly and inarguably barred.  As held above, the declaratory
judgment counts, which seek nothing more than for the Court to
declare void the final judgment of the state court, the
endorsement of the mortgage, the assignment of the mortgage, and
the subsequent sheriff's sale of the property, are all
unquestionably barred by New Jersey's entire controversy
doctrine.  So too are Plaintiff's FDCPA claims, which are
supported by no further allegations than those underlying her
requests for declaratory judgment and are centered on the exact
same events.

The single brief Mr. Thomas has filed in opposition to the
motions to dismiss provides no plausible arguments to defend
against dismissal, citing only to inapplicable, inapposite, and
irrelevant case law that does not rise to the level of
presenting reasonable argument.  While the brief attempts to
argue that these claims were not "germane" to the foreclosure
action, that argument is patently frivolous: the complaint, from

start to finish, is dedicated to alleging that the mortgage and its assignment, and therefore the foreclosure action and judgment and the subsequent sheriff's sale, were improper and invalid — presumably so that Plaintiff may use such declarations to avoid the foreclosure judgment and eviction.  Despite what that brief argues, each and every one of the counts in the Complaint requests a declaration that certain aspects of the mortgage, the foreclosure action, or the sheriff's sale were invalid.  Further, as the Court described above, Plaintiff's FDCPA claims entirely fail to state a valid claim against any of the FDCPA defendants, and in fact are so lacking in factual allegations that the Court was unable to assess Defendants' statute of limitations argument, although it appears highly likely that the FDCPA claims are also time-barred.

Mr. Thomas has further failed to provide the Court with any explanation or additional case law to support his arguments in his brief opposing sanctions, or to at least make the claims brought in the Complaint appear to have been somewhat reasonable at the time they were brought.  Simply put, it should have been clear to Mr. Thomas prior to his filing of this action that the claims he was bringing on behalf of Plaintiff were barred and insufficient on multiple fronts.

Nor are the arguments put forth in any of the other documents Mr. Thomas has filed in this action any stronger or

more defensible.  Plaintiff's motion to remand consists entirely of patently frivolous and unmeritorious arguments.  Having made the strategic decision to plead three claims under the FDCPA, which unsurprisingly resulted in the case being removed from state court, Mr. Thomas then filed a brief moving for remand that argues nothing more than that there is no case law or statutory authority stating that state courts are incapable of hearing FDCPA claims, and providing no support other than a string cite to state court cases involving FDCPA claims.  (See ECF No. 16 at 6-7).  This argument is not only incorrect; it flagrantly ignores the straightforward law regarding removal of a state court action and fails to present any serious support for requesting remand and forcing the Defendants to brief the issue.

Mr. Thomas cannot plead simple ignorance or error: despite the fact that Defendants pointed out this issue in their brief opposing remand, he repeated the exact same arguments in his brief opposing the present motion for sanctions.  In fact, the Court's review of his brief opposing sanctions revealed that pages 5-11 are almost entirely identical to his brief opposing the motions to dismiss.  (Compare ECF No. 27 at 5-11 with ECF No. 16 at 5-12).  As far as the Court can tell, Mr. Thomas simply copied and pasted the frivolous arguments he made for remand and opposing the motions to dismiss into his brief

opposing sanctions.  Faced with a motion for sanctions, Mr. Thomas did not even take the time to draft a new brief.

The sections of his brief opposing sanctions that are original also do not present any relevant arguments.  Instead, the four pages of original work simply provide long quotes regarding the purpose of Rule 11 sanctions, and argue that Defendants removed this action to federal court "for the sole purpose of attempting to attack Plaintiff's attorney" — a patently absurd claim, given Mr. Thomas's failure to make any non-frivolous argument for remand.  (ECF No. 27 at 1).  Mr. Thomas has put forth no other argument as to why sanctions should not be imposed, and his opposition brief provides the Court no reason to believe that any lawyer would have believed the claims he brought and the arguments he has made over the course of this litigation were reasonable.

Mr. Thomas's failure to make any proper argument opposing sanctions, and his actions in simply repurposing a brief he filed earlier in the same litigation, are compounded by the fact that he did not file the brief opposing sanctions until a week after the date by which it was due.  This failure to meet his deadline was not a one-time occurrence in this action.  As described above, Mr. Thomas waited until weeks after Plaintiff's deadline to oppose the third motion to dismiss before filing a motion for an extension of time, which, yet again, failed to

even reference the relevant standards for such a request.  In
fact, no briefs opposing the third or fourth motions to dismiss
have ever been filed in this action, with Mr. Thomas's requested
new deadline of June 1, 2020 having passed over four months ago.

The Court understands that mistakes occur and deadlines are
sometimes missed.  But given the repeatedly frivolous and
unmeritorious arguments Mr. Thomas has put forth in the briefs
he has actually bothered to file, his repeated failure to meet
the Court's deadlines regarding dispositive motions and to even
file briefs opposing such motions at all is simply inexcusable.

The Court similarly has serious misgivings about Mr.
Thomas's motivations for filing this action in the first place.
As described above, this dispute is not new.  Plaintiff admits
she was served the complaint in the underlying foreclosure
action in 2014, and the state chancery court entered the final
judgment in 2015.  Plaintiff then managed to delay a sheriff's
sale of the property and her eviction for almost four years,
through the filing of two separate bankruptcy actions.  From the
Court's review of the documents from the proceedings related to
this dispute, it appears that Mr. Thomas began representing
Plaintiff at some point after the second bankruptcy petition was
dismissed in 2019 and before the third bankruptcy petition was
filed in November 2019.  While Mr. Thomas is not responsible for
Plaintiff's actions before he was hired, and the Court has no

facts before it to suggest that he was responsible for her
actions in filing the third bankruptcy petition, Rule 11 does
impose a duty for him to make a reasonable inquiry into the
facts of the case.  Accordingly, it is assumed for the purposes
of this motion that Mr. Thomas knew, or should have known, about
the history of the dispute and the repeated bankruptcy actions
filed by Plaintiff.

After being hired, Mr. Thomas filed a motion to stay
eviction and a motion to vacate the judgment on Plaintiff's
behalf in the original state chancery court, presenting
arguments that are, in many places, nearly identical to the
arguments made in the present case — even though the final
judgment in the foreclosure action had been entered over four
years earlier and the sheriff's sale had already occurred.  (ECF
No. 13-5 Ex. J and K).  When the motion to stay eviction was
denied the next day by the state chancery court, Plaintiff,
through another attorney, immediately filed a third bankruptcy
petition.  (ECF No. 9-21 Ex. S).  After the bankruptcy court
granted Defendants relief from the automatic stay and ordered
that no further automatic stays would be granted to Plaintiff,
Mr. Thomas filed the present action only a few weeks later in
the Superior Court of New Jersey, Law Division.

The Court has little doubt as to why Mr. Thomas chose to
file in that court.  At that point in time, the chancery court

had already rejected Plaintiff's arguments just two months
earlier, and he was presumably aware that the bankruptcy court
had ordered that she would receive no further automatic stays.
As Defendants have noted, Judge Kugler had also previously
entered an order enjoining Mr. Thomas from "filing any further
complaint, lawsuit, or petition, which pertains to or references
any prior foreclosure action, in the United States District
Court for the District of New Jersey, without prior
authorization of the Court."  Hood v. Victoria Crossing
Townhouse Ass'n, et al., Civil Action No. 18-12259, at ECF No.
35.  Accordingly, it appears that Mr. Thomas chose the only
remaining court that might permit him and Plaintiff to bring
their action to try and avoid eviction.

Simply put, Mr. Thomas's actions in filing this lawsuit,
making repeatedly frivolous and unmeritorious arguments in the
briefs he managed to file, failing to file documents by their
deadlines, and failing to oppose dispositive motions all clearly
demonstrate his attempts to abuse and needlessly delay the
litigation process.  The Court agrees that granting the
attorneys' fees and costs incurred by MERS and U.S. Bank for
defending this action are a proper and fair form of sanctions to
impose.

However, the Court cannot determine the precise monetary
amount at this stage.  Accordingly, MERS and U.S. Bank shall

submit affidavits of fees and expenses justifying the amount sought, particularized in the manner required by Local Civil Rule 54.2, within fourteen (14) days of the filing of this opinion.  Mr. Thomas will then have the opportunity to submit any objections as to the amounts requested within fourteen (14) days of the filing of the Defendants' fee petition.

The Court is also mindful of the fact that Mr. Thomas runs a small firm and may not have the financial resources to reimburse MERS and U.S. Bank for the full fees and costs they have incurred in defending this action.  District courts are required "to consider various mitigating factors in their calculation of the total monetary compensation owed by lawyers who have been found to have violated Rule 11," including the sanctioned party's ability to pay.  Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d. Cir. 1988). Therefore, at the same time Mr. Thomas files any objections to Defendants' fees and costs, he may also submit an affidavit under seal addressing his ability to pay those fees and costs, which the Court will consider in determining the appropriate amount to be assessed as sanctions.

<u>**CONCLUSION**</u>

For the reasons expressed above, Plaintiff's motions to remand (ECF No. 16) and for an extension of time (ECF No. 22) will be denied, Defendants' motions to dismiss (ECF NO. 9, 13,

17, and 21) will be granted and the complaint will be dismissed with prejudice, and Defendants MERS and U.S. Bank's motion for sanctions (ECF No. 25) will be granted.  MERS and U.S. Bank will have fourteen days to file affidavits detailing their attorney's fees and costs pursuant to Local Rule 54.2, and within fourteen days of Defendants' application, Mr. Thomas shall file a response indicating with specificity any objections to their fee requests, as well as an affidavit under seal addressing his ability to pay the amount requested by MERS and U.S. Bank.

     An appropriate Order will be entered.


Date:  October 15, 2020         /s Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.