KRISTINE KEYES,

No. 1:20-cv-02649 (NLH)(KMW)

        Plaintiff,

    v.

NATIONSTAR MORTGAGE,LLC; U.S.
BANK, N.A. AS TRUSTEE FOR
LSF9 MASTER PARTICIPATION
TRUST; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC.;
BANK OF AMERICA, N.A. AS
CLAIMED SUCCESSOR IN INTEREST
TO COUNTRYWIDE HOME LOANS,
INC.; SHERIFF OF CAMDEN
COUNTY; AND RAS CITRON LAW
OFFICES,

**OPINION**

        Defendants.

**APPEARANCES:**

JOSHUA LOUIS THOMAS
JOSHUA L. THOMAS & ASSOCIATES
225 WILMINGTON WEST CHESTER PIKE
SUITE 200
CHADDS FORD, PA 19317

*Attorney for Plaintiff Kristine Keyes.*

FRANCESCA ANN ARCURE
MCCALLA RAYMER LEIBERT PIERCE, LLC
99 WOOD AVENUE
ISELIN, NJ 08830

*Attorney for Defendant Nationstar Mortgage, LLC.*

JOY HARMON SPERLING
STEPHEN ROBERT CATANZARO
DAY PITNEY LLP
1 JEFFERSON RD
PARSIPPANY, NJ 07054

*Attorneys for Defendants U.S. Bank, N.A. As Trustee for LSF9 Master Participation Trust, and Mortgage Electronic Registration Systems Inc.*

MICHAEL E. BLAINE
WINSTON & STRAWN, LLP
200 PARK AVENUE
NEW YORK, NY 10166

*Attorney for Defendant Bank of America, N.A. As Claimed Successor in Interest to Countrywide Home Loans, Inc.*

DAVID NEEREN
RAS CITRON, LLC
425 COMMERCE DRIVE
SUITE 150
FORT WASHINGTON, PA 19034

*Attorney for Defendant RAS Citron Law Offices.*

**HILLMAN**, **District Judge**

This matter comes back before the Court on Plaintiff's motion for reconsideration.  Plaintiff is specifically seeking reconsideration of the Court's October 16, 2020 Opinion and Order dismissing her claims with prejudice, denying her motion to remand, and sanctioning her attorney, Joshua Thomas.  All Defendants in this action have opposed her motion.

Defendants U.S. Bank, N.A. as Trustee for LSF9 Master Participation Trust and Mortgage Electronic Registration Systems Inc. ("MERS"), in their opposition brief, further request permission to supplement their original declaration of attorneys' fees and costs to be paid by Mr. Thomas as sanction, to add the additional fees and costs incurred in opposing the present motion.  For the reasons expressed below, Plaintiff's

motion will be denied, Mr. Thomas will be further sanctioned for his actions in filing the present motion, and MERS and U.S. Bank will be permitted to supplement their declaration of fees and costs for this Court to consider in imposing its final sanction of Mr. Thomas.

**BACKGROUND**

The Court previously provided a detailed outline of the factual and procedural background of this case in its October 16, 2020 Opinion, (ECF No. 31), and assumes the parties' familiarity with the relevant history. Accordingly, it will only restate that background as necessary for the purposes of ruling on the presently pending motion and related sanctions request.

In August 2006, Plaintiff Kristine Keyes executed a mortgage on a property in Pennsauken Township, New Jersey in favor of Defendant MERS, which was later assigned to Defendant Nationstar Mortgage, LLC. (ECF No. 1-1, Ex. A and B). After she defaulted on the mortgage, Nationstar filed an action in mortgage foreclosure in December 2013. (ECF No. 9-6 Ex. D). A final judgment of foreclosure was entered by a state court on July 16, 2015. (ECF No. 1-1 at 7; ECF No. 9-8 Ex. F).

Over the next five years, Plaintiff filed a series of bankruptcy petitions in an apparent attempt to stall the foreclosure and sale of the property; her tactics eventually

failed after the bankruptcy court issued multiple orders
vacating the automatic stays that accompany the filing of
bankruptcy petitions and informed Plaintiff that no further
automatic stays would be granted if she filed for bankruptcy a
fourth time.  (See ECF No. 31 at 3-5) (describing and providing
citations for Plaintiff's history of filing bankruptcy
petitions).  Although the property was finally sold at a
sheriff's sale in April 2019, Plaintiff continued to fight the
process.  Id.  Around that time, she hired Joshua Thomas as
counsel, and proceeded in November 2019 through February 2020 to
file multiple motions to vacate the final judgment of
foreclosure and the sheriff's sale, as well as to stay eviction,
in the original foreclosure action in state chancery court.
(ECF No. 13-5, Exs. J-P).  Those motions were all eventually
denied or withdrawn.

Plaintiff, represented by Mr. Thomas, then filed her
complaint in this action in New Jersey Superior Court on
February 18, 2020, which was removed by Nationstar on March 11
and assigned to this Court.  Each of the named Defendants
responded by filing four separate motions to dismiss; Plaintiff
opposed the first two motions, failed to respond to or oppose
the latter two which were filed at later dates, and further
responded by filing a motion for remand back to the state Court.
(See ECF No. 31 at 6) (describing filing history in this

action).  Two of the Defendants, MERS and U.S. Bank, then filed

a motion for sanctions against Plaintiff and her attorney,

alleging that they had knowingly brought frivolous claims.

Plaintiff, through Mr. Thomas, eventually filed a brief opposing

the motion for sanctions a week after the deadline to oppose

that motion had passed.

This Court then issued an Opinion and Order on October 16,

2020, ruling on each of the then pending motions.  First, the

Court denied Plaintiff's motion to remand, finding that she had

"not put forth any legitimate arguments for remand," and that

her brief "entirely ignore[d], or misstate[d], the law regarding

the removal of state court actions."  (ECF No. 31 at 8-9).

Second, the Court granted all four motions to dismiss, finding

that Plaintiff's claims were clearly and unequivocally barred by

the Rooker-Feldman doctrine and New Jersey's Entire Controversy

Doctrine, and that Plaintiff had further failed to sufficiently

state a claim under the Fair Debt Collections Practices Act.

Id. at 20, 25, and 27.

Finally, the Court granted MERS and U.S. Bank's motion for

Rule 11 sanctions against Mr. Thomas, and declined to impose

sanctions against Plaintiff herself.  The Court decided

sanctioning Mr. Thomas was appropriate for a variety of reasons.

First, the Court explained that each of the claims in the

Complaint that Mr. Thomas had knowingly signed and filed were,

"on their face, clearly and inarguably barred" in a manner that
any reasonable, competent attorney would have realized if they
had done the proper factual and legal research prior to filing.
Id. at 29.  This was thoroughly demonstrated by the fact that
"[t]he single brief Mr. Thomas ha[d] filed in opposition to the
motions to dismiss provide[d] no plausible arguments to defend
against dismissal, citing only to inapplicable, inapposite, and
irrelevant case law that [did] not rise to the level of
presenting reasonable argument," and that the "motion to remand
consist[ed] entirely of patently frivolous and unmeritorious
arguments" that "flagrantly ignore[d] the straightforward law
regarding removal of a state court action and fail[ed] to
present any serious support for requesting remand and forcing
the Defendants to brief the issue."  Id. at 29-31.

     The Opinion further emphasized that not only had Mr. Thomas
put forward a series of consistently frivolous claims and
arguments, but he had also failed to file any opposition to two
motions to dismiss and had repeatedly missed other filing
deadlines.  In fact, Mr. Thomas managed to file his brief
opposing the motion for sanctions, which directly targeted his
own wallet, a week late.  And, perhaps even more importantly,
Mr. Thomas declined to even put forth the effort required to
draft a wholly new brief, and instead "simply copied and pasted
the frivolous arguments he made for remand and opposing the

motions to dismiss into his brief opposing sanctions," with almost 7 full pages being entirely identical to his brief opposing the first two motions to dismiss.  Id. at 31-33.

Finally, the Court stated that it had "serious misgivings about Mr. Thomas's motivations for filing this action in the first place," given the procedural history of these parties' dispute and Plaintiff's repeated prior attempts to avoid foreclosure and sale of the property.  Id. at 33.  As the Court explained in its prior Opinion, it appears clear that Mr. Thomas filed the present complaint in the only remaining court, the New Jersey Superior Court, which might possibly have entertained Plaintiff's claims or a complaint filed by Mr. Thomas: Plaintiff's exact claims here had already been rejected by a state chancery court only a few months earlier, Plaintiff had been told by the United States Bankruptcy Court for the District of New Jersey that she would receive no further automatic stays if she filed bankruptcy a fourth time, and Judge Kugler of this Court had previously entered an order enjoining Mr. Thomas from "filing any further complaint, lawsuit, or petition, which pertains to or references any prior foreclosure action, in the United States District Court for the District of New Jersey, without prior authorization of the Court."  Id. at 33-34 (quoting Hood v. Victoria Crossing Townhouse Ass'n, et al., Civil Action No. 18-12259, at ECF No. 35).  This action was

presumably one last attempt to stall or reverse the foreclosure-related legal proceedings which began almost seven years ago.

The Court therefore found that sanctions were appropriate and directed MERS and U.S. Bank to file a declaration outlining their attorneys' fees and costs incurred in defending this action. Id. at 35-36. However, recognizing "that Mr. Thomas runs a small firm and may not have the financial resources to reimburse MERS and U.S. Bank for the full fees and costs," the Court granted him permission to not only submit objections to specific amounts requested by Defendants, but also to submit an affidavit under seal addressing his ability to pay those fees and costs, which the Court stated it would consider in determining the proper sanctions amount to impose. Id. at 36.

Rather than comply with this Court's directions and take advantage of the opportunity to potentially limit the amount he would be ordered to pay as sanction, Mr. Thomas instead chose to file a short brief that simply re-argued whether sanctions should be imposed at all, making no specific objections to any amounts requested by MERS and U.S. Bank, and filing no affidavit regarding his ability to pay any such fees and costs. (ECF No. 34). He then proceeded to file, on Plaintiff's behalf, a motion for reconsideration of the Court's October 16 Opinion and Order on November 13, 2020. (ECF No. 35). Each of the named Defendants have filed briefs opposing the motion for

reconsideration, (ECF No. 41-43), and MERS and U.S. Bank further request permission to supplement their previous declaration with a supplemental declaration that includes the fees and costs sustained in opposing this motion, which they believe they should also be awarded as further sanction against Mr. Thomas. The motion for reconsideration is therefore fully briefed and ripe for adjudication.

## DISCUSSION

### I.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. Motion for Reconsideration

Plaintiff first moves under Fed. R. Civ. P. 59(e) and 60(b) for reconsideration of the Court's October 16, 2020 Opinion and Order dismissing her claims with prejudice.  (ECF No. 31 and 32).  A motion for reconsideration may be treated as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), or as a motion for relief from judgment or order under Fed. R. Civ. P. 60(b), or it may be filed pursuant to Local Civil Rule 7.1(i). The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence."  Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

A judgment may be altered or amended only if the party

seeking reconsideration shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. <u>Id</u>. A motion for reconsideration may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached, <u>P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp.</u>, 161 F. Supp. 2d 349, 352 (D.N.J. 2001), and mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp. 2d 339, 345 (D.N.J. 1999), and should instead be dealt with through the normal appellate process. <u>S.C. ex rel. C.C. v. Deptford Twp Bd. of Educ.</u>, 248 F. Supp. 2d 368, 381 (D.N.J. 2003); <u>U.S. v. Tuerk</u>, 317 F. App'x 251, 253 (3d Cir. 2009) (quoting <u>Mayberry v. Maroney</u>, 529 F.2d 332, 336 (3d Cir. 1976)) (stating that "relief under Rule 60(b) is 'extraordinary,' and 'may only be invoked upon a showing of exceptional circumstances'").

"[A] district court has considerable discretion to decide whether reconsideration is necessary to prevent manifest injustice." <u>ADP, LLC V. Lynch</u>, No. 16-01053, 2017 WL 3022320 at *2 (D.N.J. July 17, 2017). But "[r]econsideration is an extraordinary remedy that is granted very sparingly." <u>Brackett</u>

v. Ashcroft, No. 03-3988 (WJM), 2003 U.S. Dist. LEXIS 21312, at
*2 (D.N.J. Oct. 7, 2003) (internal citations omitted); see also
L. Civ. R. 7.1(i), cmt. 6(d).

As stated above, Plaintiff here moves for reconsideration
of the Court's October 16, 2020 Opinion and Order granting
Defendants' motions to dismiss and denying her motion for
remand.  Plaintiff's brief is divided into two sections, with
two separate arguments presented.  The Court will briefly
address them in the order they are found in her brief.

First, Plaintiff argues that "Res Judicata, Collateral
Estoppel, Rooker-Feldman Doctrine, The Younger Abstention
Doctrine and the Entire Controversy Doctrine Do Not Apply."
(ECF No. 35 at 5).  This first argument can be rejected out of
hand, for one very simple reason: the arguments presented here
are identical — in almost all cases, literally word for word —
to the arguments this Court already rejected in its October 16
Opinion.  Plaintiff points to no changes in intervening law, and
no clear error of law or fact that would justify the
extraordinary remedy of granting reconsideration.  In fact,
Plaintiff not only does not raise a change in intervening law,
but almost entirely fails to raise any new arguments or case law
at all; the lone exceptions are three paragraphs on pages 6-7
and 10-11 of her brief discussing the Colorado River abstention
doctrine, which is entirely irrelevant and unconnected to this

case and referenced nowhere in this Court's October 16 Opinion.

Instead, Mr. Thomas, on Plaintiff's behalf, has again filed an almost identical brief, with whole pages copied and pasted from either her brief opposing the motions to dismiss or her brief opposing the motion for sanctions. (ECF No. 16 and 27). As stated above, mere disagreement with this Court's prior holdings is entirely insufficient as a basis for seeking reconsideration. If Plaintiff wished to simply re-cite the same law and argue this Court was incorrect, she had the right to file an appeal of this Court's October 16 Opinion and Order with the Court of Appeals for the Third Circuit. The Court will not waste any more of its time re-addressing the exact same points it already addressed and rejected in significant detail.

Second, Plaintiff asserts that she has newly discovered evidence that "Shows This Case Should Be Reinstated And Remanded." (ECF No. 35 at at 11). Plaintiff's brief, of course, makes no attempt to put forth substantive argument on this point. Instead, her brief simply contains one paragraph which refers the Court to a newly filed "Certification of Private Investigator-William J. Paatalo," (ECF No. 35-2, Ex. B) and asserts that "[h]ad this been available previously, it would have been asserted as part of the complaint, but it only just recently became available from the Expert Witness." (ECF No. 35 at 11). Based on this assertion, and one sentence listing what

the certification contains, she contends that this case should be "re-opened, remanded back to state court, and permitted to proceed on its merits." Id.

Plaintiff's second basis for reconsideration just barely warrants more attention than did her first. As each of the Defendants have noted, the Third Circuit has repeatedly made clear that "'new evidence,' for reconsideration purposes, does not refer to evidence that a party ... submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." Blystone v. Horn, 664 F.3d 397, 415-16 (3d Cir. 2011) (quoting Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc., 602 F.3d 237, 252 (3d Cir. 2010)). Accordingly, evidence that was not actually newly discovered and previously unavailable, but only newly submitted in response to a court finding that a party's previous allegations or evidence were insufficient to avoid dismissal, is not a valid basis for reconsideration. Id. at 416.

Here, even a quick review of the Paatalo Certification makes abundantly clear that the certification, and the "findings" described within, are not "newly discovered." Substantial portions of the certification are based on Paatalo's description of documentation he pulled from records systems that

are openly available to the general public, or from information he received or found from civil litigation in other courts — a point which he himself admits at multiple points. See, e.g., ECF No. 35-2, Ex. B at ¶ 18 (stating that "This website and document are readily available to the general public" in referring to one of his supporting exhibits); id. at ¶ at 25 (stating that "I obtained this document upon conducting a 'Google Search' from U.S. Bank's corporate website . . ."). And, more importantly, Plaintiff has made no attempt whatsoever to explain how this evidence could be considered newly discovered, nor to refute Nationstar's likely accurate accusation that this new report is nothing more than the result of the fact that "after the entry of the October Order Plaintiff's counsel did some research and engaged an expert." (ECF No. 43 at 11).

Further, while the Paatalo Certification is dated on the last page as having been signed on November 12, 2020, the day before it was filed in this action, the caption on the first page of the certification is instead for the previous foreclosure action in the New Jersey Superior Court, Chancery Division and repeatedly refers to Nationstar as "Plaintiff" and Kristine Keyes as "Defendant," the proper titles for those parties in the previous foreclosure action, but the opposite of their relevant roles in this case — raising serious questions

14

regarding whether this certification was even newly prepared for this specific litigation, or had been created for a prior action that pre-dated the filing of this lawsuit. Regardless, the Court has been given no reason to believe that this evidence is newly discovered, and it cannot serve as the basis for a motion for reconsideration.

However, the Court finds it necessary to point out yet another reason why Plaintiff's motion here is entirely baseless: even if Plaintiff's evidence were newly discovered and it persuasively supported Plaintiff's claims, it would have had no impact on this Court's findings in its October 16 Opinion and cannot justify granting a motion for reconsideration. Paatalo openly states in his certification that he "was retained to review chain of title for the Mortgage and Note which is the subject of this action" and "was asked to point out any discrepancies or issues of fact regarding the chain of title and ownership claims" made by the parties here, and his certification focuses entirely on these questions. (ECF No. 35-2, Ex. B at ¶ 10). But this Court could not have been clearer in its October 16 Opinion in holding that Plaintiff's claims were facially barred because "the Rooker-Feldman doctrine forbids federal court claims seeking to challenge a foreclosure judgment, the validity of the mortgage, or the right to foreclose," (ECF No. 31 at 18) (citing Gage v. Wells Fargo Bank,

N.A., 521 F. App'x. 49, 51 (3d Cir. 2013)), and that to the extent any of her claims were not barred by the Rooker-Feldman doctrine, those claims were "also barred by the entire controversy doctrine." Id. at 25.

The Court did not simply dismiss Plaintiff's claims because of insufficient evidence or a lack of detailed factual allegations regarding the chain of title or proper ownership claims to the property in question. It dismissed her claims because this Court is clearly and unquestionably barred from serving as a forum for Plaintiff to relitigate claims that were already fully resolved, or required to have been resolved, by a state court in a prior action. The sufficiency, or lack thereof, of her evidence was entirely irrelevant to the Court's holding and remains entirely irrelevant today. Plaintiff's attempt to seek reconsideration of that Opinion and Order based on "newly discovered evidence" is therefore fatally flawed on its face and could never have succeeded. The motion will be denied.

## III. **Motion for Leave to Amend the Complaint**

Plaintiffs' motion also includes a brief request that if the Court does not grant her motion for reconsideration, it permit her to amend her complaint to include the "newly discovered facts" described above. Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading

once as a matter of course twenty-one (21) days after serving the pleading or twenty-one (21) days "after a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). A court may deny leave to amend a pleading where it finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. The Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Given the Court's denial of Plaintiff's motion for reconsideration, it should come as no surprise that she will not be granted leave to amend her complaint. For the same reasons expressed above, and as this Court stated clearly in its prior Opinion when it dismissed her claims with prejudice, Plaintiff's claims are barred and any attempt to amend the complaint by adding additional factual allegations supporting them would be futile. Plaintiff will not be granted an opportunity to further extend this action, or to attempt to further delay or otherwise impact any ongoing activity related to the foreclosure or sale of the property at the center of this dispute.

**IV.  Defendants' Request to Supplement Declaration of Fees**

Having found that Plaintiff's motion must be denied, the Court turns now to a related request made by Defendants MERS and U.S. Bank.  In their joint opposition brief, MERS and U.S. Bank assert that Plaintiff's counsel Joshua Thomas's actions in filing the motion for reconsideration again meet the standards for Rule 11 sanctions.  The Court previously granted their earlier motion for sanctions based on the initial filing of the Complaint in this action and Mr. Thomas's actions in litigating it, after which MERS and U.S. Bank filed, at the Court's invitation, a declaration outlining the fees and costs they had incurred in litigating the action up to that point.  (ECF No. 33).  They now request "leave to supplement their declaration of fees to include those fees incurred in defending Plaintiff's frivolous Motion" for reconsideration.  (ECF No. 41 at 13).

The Court has no difficulty in granting MERS and U.S. Bank's request.  In fact, the Court finds that Mr. Thomas's actions in filing the present motion for reconsideration may be even more obviously deserving of sanction than were the actions he was previously sanctioned for, if only because he was specifically warned and sanctioned for the exact misconduct he has again engaged in here.

While Mr. Thomas should be well aware of the relevant standards for imposing sanctions by this stage, the Court will

briefly repeat them here.  Rule 11 imposes an affirmative duty

on an attorney to conduct a reasonable inquiry into the factual

and legal bases of all claims before filing any document with

the court, Business Guides, Inc. v. Chromatic Commc'ns Enters.,

Inc., 498 U.S. 533, 551 (1991), and provides that sanctions may

be imposed in the exceptional circumstance where a claim or

motion is patently unmeritorious or frivolous.  Paris v.

Pennsauken School Dist., No. 12-7355 (NLH/JS), 2013 WL 4047638,

at *6 (D.N.J. 2013) (citing Watson v. City of Salem, 934 F.

Supp. 643, 662 (D.N.J. 1995)).  Sanctions may be particularly

appropriate where the evident frivolousness of a claim or motion

amounts to an "abuse[ ] of the legal system."  Id.  Similarly,

"[a]mong the implied and incidental powers of a federal court is

the power to discipline attorneys who appear before it," In re

Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 278

F.3d 175, 189 (3d Cir. 2002) (citations and quotation marks

omitted), especially when it determines that, in the course of

litigation, an attorney "acted in bad faith, vexatiously,

wantonly, or for oppressive reasons."  Id. (quoting Chambers v.

NASCO, Inc., 501 U.S. 32, 45-46 (1991)).

    As described above, Mr. Thomas was sanctioned by this Court

in October 2020 for multiple reasons, but most centrally because

he had pursued clearly frivolous claims and in doing so had

repeatedly missed deadlines, failed to oppose certain motions,

and then filed a brief that was almost entirely identical to a previous brief he had filed in this same action. Rather than taking this Court's prior imposition of sanctions against him — rather than his client — as a clear sign that his actions were unprofessional, inappropriate, and beyond what this Court would permit or excuse from the lawyers practicing before it, Mr. Thomas apparently viewed those sanctions as an invitation to do the exact same thing all over again.

The decision to sign and file the present motion and its supporting brief warrants imposition of additional sanctions for several extremely straightforward reasons. To begin with, the frivolity of the motion and the arguments put forth in the supporting brief cannot be overstated. Mr. Thomas himself notes, on the first page of the brief, that a motion for reconsideration will only be granted if a party can put forward newly discovered evidence, a change in intervening law, or some clear error of law or fact made by the court. The brief here provides none of these bases for reconsideration. The first section of the brief appears to dispute the Court's ruling on the law rather than factual grounds, but comes nowhere close to putting forward a rational argument that justifies the filing of the motion. It cites to absolutely no case law, rules, or statutes that were issued or amended more recently than 2019, which is prior to the filing of this action. The only new case

law cited at all addresses the Colorado River abstention

doctrine, a concept that is not only unrelated to this action,

but which was never once referenced in the Court's October 16

Opinion and clearly played no role in the Court's holdings

there.

Mr. Thomas has failed to put forward any changes in

intervening law or clear errors of law for a very simple reason:

he has once again chosen not to write an original brief in

support of this motion.  Instead, for at least the second time,

Mr. Thomas has filed a brief that is almost entirely copied and

pasted from a previous brief he filed in this same action.  The

brief here is, in total, approximately 11 pages long.  Page 1

and Page 4 are both devoted to individual paragraphs providing

legal standards, and do not appear to have come directly from a

previous brief; the single paragraph on the bottom of page 11

and the top of page 12 that addresses "newly discovered

evidence" also appears to be original writing by Mr. Thomas.

From the Court's close review of the filing, however, that

is almost the entirety of the original drafting to be found

here.  The factual background found on pages 2 and 3 is directly

taken from both his brief opposing the motion to dismiss and his

brief opposing sanctions.  While that on its own is not

necessarily an issue, nearly the entirety of the substantive

analysis found in the brief, which spans pages 5 through 10, is

also clearly copied and pasted from one of those prior briefs —
since Mr. Thomas had already re-filed an almost identical brief
in opposing the previous motion for sanctions, the Court is
unable to determine exactly which brief he copied and pasted
from here.   (Compare ECF No. 35 with ECF No. 16 and 27).

There only appear to have been two changes made to the
central legal analysis: (1) the addition of the three previously
mentioned paragraphs discussing Colorado River abstention,
which, based on their complete irrelevance here, the Court can
only assume he accidentally copied from some other brief not
before this Court; and (2) a handful of new sentences or phrases
designed to smooth out transitions between paragraphs, which
were necessary because Mr. Thomas, likely in an attempt to hide
that he had essentially filed the exact same brief for the third
time in this action, simply changed the order in which several
of the paragraphs from the previous briefs were placed.   In
fact, it appears that Mr. Thomas could not even be bothered to
fix the inevitable formatting issues that come from copying and
pasting passages from different documents, as the font size and
indentation of different paragraphs varies randomly throughout
the brief, in a manner that seems to follow the changes he made
to the order of the paragraphs.

It is important to emphasize the seriousness of Mr. Thomas'
actions here: after having been sanctioned for pursuing

frivolous claims and arguments and then simply copying those same arguments word-for-word in a second brief, he chose to file a motion for reconsideration that copied and pasted the exact same frivolous arguments again for a third time.  Essentially, he chose not only to disregard this Court's decision to sanction him for his prior actions, but to immediately repeat them in a brief filed only a few weeks later.

And these are not the only issues with the briefing Mr. Thomas has submitted here.  The only original argument put forward in support of Plaintiff's motion is the contention that Plaintiff had newly discovered evidence relevant to her claims. First, as the Court explained above, Mr. Thomas's brief makes no attempt whatsoever to show that the "evidence" in the Paatalo Certification was in fact newly discovered, and this new evidence could not possibly have impacted the Court's holding regardless, rendering this yet another frivolous argument on his part.

However, a separate, potentially much more serious concern became clear upon close review of the Paatalo Certification. Mr. Thomas represents in his brief filed on November 13, 2020 that he "only just received this evidence," and contends that "[h]ad this been available previously, it would have been asserted as part of the complaint, but it only just recently became available from the Expert Witness."  (ECF No. 35 at 11-

12).  The certification bears the apparent signature of William J. Paatalo, and is dated November 12, 2020, the day before the motion was filed. (ECF No. 35-2, Ex. B at 24).

But even a cursory review of the first page of the certification raises an initial question: the caption, rather than being for this case, is for "Nationstar Mortgage, LLC, Plaintiff, v. Kristine Keyes, et al., Defendants" in the "Superior Court of New Jersey, Chancery Division: Camden County, Docket No.: F-047181-13."  As this Court explained above, prior to the filing of this complaint Plaintiff and Mr. Thomas had filed a series of motions in November 2019 seeking to stall foreclosure and sale of her property in the state chancery court action bearing that docket number.

A close reading of the Paatalo Certification further suggests that, rather than this simply being a case of the wrong caption being added to the top of the document, this certification was actually purposefully prepared for that earlier state chancery court action.  Throughout the certification, Paatalo refers to Nationstar as the "Plaintiff" and Keyes as the "Defendant," naming conventions that are only accurate if he — or the lawyer helping to prepare the certification, presumably Mr. Thomas — anticipated that this certification would be filed in the state court action, rather than the current action before this Court.  This raises serious

concerns for a simple reason: review of the state chancery court's docket shows that Plaintiff Kristine Keyes, and Mr. Thomas, have not filed anything in that state court action since February 25, 2020, (see Docket No.: F-047181-13), two weeks prior to the date this action was removed to this Court, nearly 8 months prior to this Court's October 16 Opinion, and nearly 9 months prior to the date of the Paatalo Certification's signature and when Mr. Thomas represented to this Court that he had just received this new evidence.

From the Court's perspective, there are essentially two possible explanations: either (1) Mr. Thomas lied to this Court about when and for what purpose this certification was prepared, and either had Paatalo execute a new signature page or forged a new signature page himself, or (2) Mr. Thomas hired, and presumably paid, Paatalo to write this Certification on behalf of Plaintiff, but either told him to prepare it for the wrong action or did not notice or care that Paatalo had prepared the certification for the wrong action. Put more simply, Mr. Thomas has either knowingly and purposefully lied to this Court, or he has so little respect for this Court and his own client that he did not notice, or did not care, that he was submitting a Certification that gave every indication that it was prepared for an entirely separate action, with the wrong caption and party identifiers used throughout. The Court notes here that

review of the state chancery court docket reveals that Mr. Thomas does not appear to have previously filed this Certification in that action, leaving it unclear exactly which of the two possibilities described above is the reality of this situation.  However, neither option reflects well on Mr. Thomas, and both possibilities further counsel this Court that serious sanctions are again necessary here.

What is clear, however, is the fact that any even remotely competent attorney would have known, with only the most cursory review and research, that this motion and the brief supporting it are so clearly frivolous and lacking in any substantive argument or value that the simple act of filing them would be a violation of the Federal Rules of Civil Procedure in and of itself.  While at no stage in this action has Mr. Thomas provided evidence that he is a competent attorney, the Court simply does not believe that he, in good faith, thought that merely changing the order of the paragraphs in a brief that he had already filed twice — and which had already been rejected and gotten him sanctioned — could result in a positive outcome for his client.

Instead, it appears most likely that Mr. Thomas's only intention here was to further prolong this action and to force the Defendants to incur additional legal costs in defending it. The decision to file a copied-and-pasted brief yet again, only a

few weeks after having been sanctioned for doing it the first time, goes beyond simple bad faith litigation tactics: it demonstrates a complete lack of care and a genuinely shocking lack of respect for this Court, the Defendants and opposing counsel, the responsible practice of law, and his own client. Mr. Thomas is either purposefully daring this Court to sanction him further and sanction him harshly, or believes that he is above the rules of the judiciary and our legal system and its sanctions are so irrelevant that he need not even feign a desire to avoid them.  It is immaterial which is the truth.  The Court will grant MERS and U.S. Bank's request, and permit them to supplement their declaration of fees and costs for the purposes of sanctioning Mr. Thomas further.

The seriousness of Mr. Thomas's actions in this proceeding is only further underscored by the fact that this is far from an isolated issue, and the Court's October 16 Opinion was far from the first time he was warned about his conduct.  Instead, he has been repeatedly sanctioned for the exact same behavior before other courts in this Circuit.  In fact, over just the past two years, Mr. Thomas has been sanctioned by at least 6 courts in this Circuit in at least 6 separate actions.

First, in Hood v. Victoria Crossing Townhouse Ass'n, et al., Mr. Thomas filed a complaint that ran into many of the same issues, and raised the same concerns regarding his pursuit of

frivolous claims and lawsuits, as the complaint filed here.  No.
18-12259, 2019 WL 3336132, at *9 (D.N.J. July 25, 2019).  Judge
Kugler, in dismissing the claims, noted both that Mr. Thomas
"has repeatedly filed suits in this District and in the Eastern
District of Pennsylvania that have been dismissed for lack of
subject-matter jurisdiction under the Rooker-Feldman doctrine
and/or preclusion under the New Jersey entire controversy
doctrine, as in the present action," and that "[t]he courts of
the Third Circuit have cautioned him regarding his repeated
disregard for court orders and Rules . . . ."  Id.  After
holding a hearing on an Order to Show Cause, Judge Kugler then
entered an order enjoining Mr. Thomas from "filing any further
complaint, lawsuit, or petition, which pertains to or references
any prior foreclosure action, in the United States District
Court for the District of New Jersey, without prior
authorization of the Court."  Civil Action No. 18-12259 at ECF
No. 35 (D.N.J. Sept. 24, 2019).

     A few months later, Judge Bumb sanctioned Mr. Thomas in
another case for "failing to adequately investigate the merits
of this case and the viability of the claims asserted" in that
action.  Wright v. JP Morgan Chase Bank, N.A., Civ. No. 18-8311,
2019 WL 5587262, at *8 (D.N.J. Oct. 30, 2019).  Prior to fining
him and ordering him to attend a Continuing Legal Education
seminar "which discusses the standards for attorney conduct

under Rule 11(b)-(C)," Judge Bumb noted both that "Mr. Thomas should have been more diligent in investigating and evaluating the merits of Plaintiff's claims before commencing this action," and that his conduct in pursuing certain claims was "not only irresponsible and inexcusable, but also sheds light on a careless attitude shown to the judicial system." Id. at *7.

Shortly after that, on February 13, 2020, Judge Frank of the United States Bankruptcy Court for the Eastern District of Pennsylvania sanctioned Mr. Thomas further, largely for copying and pasting his own prior filings. In re Thomas, 612 B.R. 46 (Bankr. E.D. Pa. 2020). There, Judge Frank was concerned by the appearance that Mr. Thomas may have simply filed identical schedules on a debtor's behalf as he had filed on her behalf in an earlier bankruptcy action. Id. at 48. Accordingly, he issued an Order to Show Cause for Mr. Thomas to demonstrate why he should not be sanctioned under the Federal Rules of Bankruptcy Procedure. Id. After holding a hearing, Judge Frank found that Mr. Thomas had in fact failed to investigate material information regarding the schedules before filing the second, nearly identical document. Id. at 64. And Judge Frank strongly rejected Mr. Thomas's attempts to claim that it was a simple mistake, or that it was actually the fault of his legal assistant instead, id. at 67, stating that "[s]imply put, I do not believe Thomas' testimony that the similarity between the

disclosures in the two (2) bankruptcy cases was the product of mere oversight; to the contrary, the only possible inference is that Thomas' actions were intentional." Id. at 65. Judge Frank was so concerned with Mr. Thomas's refusal to accept or acknowledge the seriousness of his misconduct at the hearing that he referred the matter to the Acting U.S. Trustee to assess whether further sanction or punishment was necessary, because "Thomas' failure to fully appreciate the inadequacy of his conduct raises a concern that there is an ongoing danger to the public and the profession if the only sanctions imposed were the financial ones described above." Id. at 69.

Apparently not deterred by any of these sanctions, Mr. Thomas proceeded to earn himself further sanction only five weeks later. In Jacovetti Law, P.C. v. Shelton, Judge Wolson, similarly concerned about Mr. Thomas's actions in two cases before him, issued an Order to Show Cause and held a hearing to assess his conduct, during which Mr. Thomas was placed under oath. No. 2:20-cv-00163-JDW, 2020 WL 1491320, at *2-3 (E.D. Pa. Mar. 27, 2020). After that hearing, Judge Wolson issued an opinion in which he sanctioned Mr. Thomas, stating that Mr. Thomas had repeatedly "disregarded the rules and deadlines that ensure cases move in an orderly way" and "ignored this Court's Orders," and more worryingly that at the hearing he "was not contrite," and in fact had "lied to the Court about the reason

for his actions, on the record and under oath." Id. at *1.
Accordingly, Judge Wolson imposed a financial sanction, and
ordered Mr. Thomas to send the Opinion, Order, "and the
transcript of the hearing on March 12 to the disciplinary
committee for every state bar and every federal court to which
Thomas is admitted," to this Court specifically as it assessed
Mr. Thomas's actions in a separate matter, and to each of his
clients. Id. at *6.

Not yet satisfied with the sanctions he had earned in those
four cases, nor with the sanctions imposed by this Court in its
October 16, 2020 Order, Mr. Thomas decided to take his show to
yet another venue, specifically the Court of Appeals for the
Third Circuit. Just three months ago, in Conboy v. United
States Small Business Administration, 992 F.3d 153 (3d. Cir.
2021), the Third Circuit sanctioned Mr. Thomas for doing the
exact same thing he was sanctioned for here: filing copied-and-
pasted briefs. Judge Hardiman, writing for the Third Circuit
panel, found that Mr. Thomas "simply took the summary judgment
section of his District Court brief and copied and pasted it
into his appellate brief, with minor changes such as swapping
'Defendant' for 'Appellee.'" Id. at 157.

And that was not all: after the Appellees there filed a
motion requesting the Third Circuit grant them damages due to
the filing of a frivolous appeal, the Court realized that

31

"counsel's response to [Appellee's] motion for damages under Rule 38 of the Federal Rules of Appellate Procedure is yet another copy-and-paste job. Counsel copied [his] previous opposition to sanctions in the District Court under Civil Rules 11 and 37 — with only insignificant alterations and additions." Id. at 158. Faced with such clear misconduct and the related lack of any non-frivolous basis for the appeal, the Third Circuit dismissed the appeal and granted the motion for sanctions, stating that "[i]t's not easy to become a lawyer. The practice of law is challenging, and even the best lawyers make mistakes from time to time. So we err on the side of leniency toward the bar in close cases. But the copy-and-paste jobs before us reflect a dereliction of duty, not an honest mistake." Id.

Finally, while this Court was actively considering the pending motion for reconsideration in this action, Mr. Thomas was sanctioned for nearly identical behavior in Taggart v. Deutsche Bank National Trust Co., No. 20-5503, 2021 WL 2255875 (E.D. Pa. June 3, 2021). In that case, Mr. Thomas had filed a remarkably similar complaint to the one here, which also attempted to help an extremely litigious client avoid foreclosure or the sale of a home through a series of patently frivolous claims and legal arguments — many leveled against some of the exact same defendants as in the present case. Id. at *1-

2.  Judge Pappert, like this Court and many before him, unequivocally rejected each of the arguments put forth by Mr. Thomas and found that they were clearly and unquestionably barred by many of the same legal doctrines repeatedly explained by this Court to Mr. Thomas.  And, most importantly for this present action, Judge Pappert found that sanctions were again necessary for a variety of reasons familiar to any Court or attorney forced to engage with Mr. Thomas's version of legal practice: dishonesty, missed deadlines, frivolous arguments, and recycled briefs.

Judge Pappert first noted that Mr. Thomas had "lied, repeatedly, to the Court" about the fact that his license to practice law in the state of Pennsylvania had been temporarily suspended due to failure to submit certain required CLE documents — which caused Judge Pappert to let him represent his client at oral argument despite the fact that he had not in fact cured the issue with his license.  Id. at *12-13.  Judge Pappert next found that Mr. Thomas "acted in bad faith by missing nearly every deadline in this case," and that "[t]he volume and severity of Thomas's errors in the Amended Complaint demonstrate[d] a complete lack of diligence and a failure to proofread or consider the foundations of his factual and legal assertions."  Id. at *14-15.  Finally, Judge Pappert held that the sheer number of frivolous claims and arguments put forward

33

"established a pattern of disregarding where it suits him unfavorable rulings or explanations from courts that contradict his erroneous view of the law," and that Mr. Thomas had "recycled [] claim[s], barred by existing law, to harass, cause unnecessary delay and needlessly increase the cost of litigation."  Id. at *16-17.  Based on all of this, Judge Pappert sanctioned Mr. Thomas $2,500, and ordered him to share the opinion in that case with every state bar and federal court to which he is currently admitted to practice, and in particular with this Court.  Id. at *18.

Given this impressive run of sanctions earned by Mr. Thomas just since July 2019, it should come as no surprise that even courts that have decided against imposing sanctions on him have repeatedly criticized and denounced his conduct and practices in the cases before them.  Judge Wolson outlined a few such cases in his opinion in Jacovetti, see 2020 WL 1491320 at *3-4, and Judge McHugh, although opting not to sanction Mr. Thomas himself, similarly noted his prior misconduct and "the pattern of conduct for which Mr. Thomas is well-known in federal and state courts at both the trial and appellate levels: failure to follow basic procedural rules, engaging in misconduct, bringing actions that are barred by prevailing doctrines applicable to the case, and a lack of candor when confronted about those issues."  Scripnicencu v. LSF9 Master Participation Trust, No.

19-5280, 2020 WL 4805349, at *13 (E.D. Pa. Aug. 18, 2020).

In fact, just a cursory Westlaw search for Mr. Thomas's name turns up even more courts in this Circuit specifically noting his professional failings and repeatedly unacceptable behavior. See, e.g., Lapensohn v. Hudson City Savings Bank, No. 19-4576-KSM, 2021 WL 1581402, at *15 n. 18 (E.D. Pa. Apr. 21, 2021) ("The Court appreciates M&T Bank Corp.'s understandable frustration with Plaintiff's counsel. And we acknowledge that multiple judges in this and other Districts have sanctioned Mr. Thomas for similar conduct. However, in this case, we cannot say that his actions are the result of willful bad faith, as opposed to ignorance. For that reason, although Mr. Thomas's efforts have been far from laudable, we decline to sanction him at this time. Mr. Thomas is, however, warned that ignorance will not provide a defense in the future."); Meyers v. Caliber Home Loans, Seterus, Inc., No. 1:19-cv-596, 2019 WL 4393377, at *10 n.26 (M.D. Pa. Sept. 13, 2019) ("We acknowledge that such woefully insufficient pleading and other abusive tactics are not unusual for Plaintiffs' counsel Joshua Thomas . . . and we caution him, as did our sister Court, that continued use of such poorly prepared filings and disregard for lack of subject matter jurisdiction and other court Rules may result in an Order to Show Cause as to why discipline should not be imposed and as to why he should not be enjoined from further filings in this Court

as well. We are deeply troubled that Plaintiffs' counsel would so recklessly and cavalierly accuse various Defendants of fraud and misrepresentation in such a conclusory and unsubstantiated manner."); Owens v. Seterus, Inc., No. 18-3383, 2019 WL 9101982, at *2 (E.D. Pa. Feb. 26, 2019) ("I remind Plaintiff and his Counsel [Mr. Thomas] that frivolous claims or those made in bad faith could result in the imposition of sanctions."); Akinsanmi v. Nationstar Mortgage, No. 3:16-cv-07732-MAS-TJB, ECF No. 43 at 3 n.2 (D.N.J. Jan. 12, 2018) ("Plaintiff's counsel [Mr. Thomas] has repeatedly disregarded the Orders of this Court and the Federal Rules of Civil Procedure throughout this entire action . . . Further disregard for the rules may result in an Order to Show Cause as to why discipline should not be imposed against counsel."); Bounasissi v. New York Life Ins. and Annuity Corp., No. 15-7585 (JBS/JS), 2016 WL 4697333, at *1 n.2 (D.N.J. Sept. 6, 2016) ("The Court explicitly brought Plaintiffs' pleading deficiency to the parties' attention in the March 4, 2016 Memorandum Opinion . . . yet Plaintiffs' counsel, Joshua Thomas, Esq., failed to even attempt to cure the deficiency. This is the third time Mr. Thomas has ignored his basic obligations under the Federal Rules of Civil Procedure in this case.").

This Court, of course, is not sanctioning Mr. Thomas for his actions in other cases before other judges. But his record — and his consistent pattern of similar misbehavior in a

significant number of separate cases over the past few years —

does factor into this Court's consideration of what sanction is

appropriate to impose.  Mr. Thomas's actions not only make

abundantly clear that he has no respect for the judiciary or our

legal system, but also reveal a remarkable and disturbing

failure to care about the outcomes of his clients' cases or the

penalties he himself may suffer.  Judge Wolson likely described

the view of many courts most succinctly when, at the beginning

of his sanctions opinion, he wrote the following:

> "Day-to-day, this Court sees lawyers of many different
> stripes. They have different specialties, they come from
> different places, and they have different backgrounds. In
> general, they conduct themselves with professionalism. They
> advocate for their clients while respecting the Court and
> the judicial system. In so doing, they justify the faith
> that our founders had in an adversarial system—a faith that
> the Court shares. Indeed, as a rule, the Court is honored
> to share a profession with the lawyers who appear before
> it.
>
> Then there is Joshua Thomas."

Jacovetti, 2020 WL 1491320 at *1.  See also Taggart, 2021 WL

2255875 at *19 ("The Court is privileged to have practice before

it diligent, honest, hard-working and talented attorneys who

advocate zealously and in good faith for their clients. Joshua

Thomas is not one of them.").

Multiple of the courts listed above chose either not to

sanction Mr. Thomas, or to impose sanctions which required him

to attend classes, barred him from filing further actions

without prior permission, or imposed only a small financial sanction, ranging from a few hundred dollars to $2,500. It is abundantly clear at this stage that simple reprimands, non-financial punishments like mandating attendance at ethics trainings, and small financial penalties are insufficient to deter him from engaging in the exact same misconduct over and over again. This Court cannot get back the time and energy Mr. Thomas has forced it to waste on this action. But at the very least it can ensure that the Defendants who have repeatedly requested this Court sanction him not be forced to bear the full costs incurred in defending this frivolous action and litigating against counsel operating in clear and undeniable bad faith.

Accordingly, the Court will grant MERS and U.S. Bank's request to supplement their declaration of fees and costs to include those fees and costs incurred while opposing the present motion for reconsideration. For the sake of fairness, the Court will follow the same procedure it described in its October 16 Opinion and Order: MERS and U.S. Bank shall submit declarations of fees and expenses justifying the amount sought, particularized in the manner required by Local Civil Rule 54.2, within fourteen (14) days of the filing of this Opinion, and then Mr. Thomas will have the opportunity to submit any objections as to the additional amounts requested within fourteen (14) days of the filing of the Defendants' fee

petition.[1]  If Mr. Thomas makes the wise decision to file such objections, MERS and U.S. Bank may file a reply to his objections within fourteen (14) days.

The Court also recognizes that we remain in the middle of a deadly global pandemic that has caused genuine financial devastation to many, and seeks only to impose a sanction commensurate to Mr. Thomas's misconduct and the need to deter him from continuing to act in this manner in the future.  He will be granted one last opportunity to submit an affidavit under seal addressing his ability to pay the fees and costs MERS and U.S. Bank have incurred in defending this action, at the same time he files any specific objections to the supplemental fees and costs those parties will request.  But Mr. Thomas is warned: if he chooses once again not to take this Court's generous invitation and to reject the opportunity to potentially limit the amount he will be ordered to pay, the Court will not hesitate to impose a sanction in the amount of MERS and U.S. Bank's full fees and costs incurred in this action.

---

[1] The Court notes here that Mr. Thomas chose to disregard this Court's previous invitation for him to submit objections to the specific fees and costs listed in Defendants' original affidavit, and instead filed another brief rearguing whether sanctions should have been imposed on him at all.  (ECF No. 34). The Court therefore finds that he has waived the right to raise specific objections to the original fees and costs requested by MERS and U.S. Bank, and he will not be permitted to go back and do so now.

**<u>CONCLUSION</u>**

For the reasons expressed above, Plaintiff's motion for reconsideration (ECF No. 35) will be denied.  MERS and U.S. Bank will have fourteen days to file affidavits detailing their attorney's fees and costs pursuant to Local Rule 54.2, and within fourteen days of Defendants' application, Mr. Thomas shall file a response indicating with specificity any objections to their supplemented fee requests only, as well as an affidavit under seal addressing his ability to pay the amount requested by MERS and U.S. Bank.  If Mr. Thomas files a response with specific objections, MERS and U.S. Bank may then file a reply to those objections within fourteen days.

An appropriate Order will be entered.


Date: June 28, 2021                    /s Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.